IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HENRY J. IACOVETTI, )
    Petitioner, ) Civil Action No. 11-212 Erie
)
v. ) District Judge Sean J. McLaughlin
) Magistrate Judge Susan Paradise Baxter
THOMAS CORBETT, JR., et al., )
    Respondents. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

### II. REPORT[1]

#### A. Relevant Background

In or around March of 2005, Petitioner was charged with crimes related to his assault of a corrections officer while he was incarcerated at the State Correction Institution Albion. On September 16, 2005, an Erie County jury convicted him of Aggravated Assault (18 Pa.C.S. § 2702(a)(3)), Simple Assault (18 Pa.C.S. § 2701(a)), and Reckless Endangerment (18 Pa.C.S. § 2705). The jury found him not guilty of the offense of Assault By a Prisoner (18 Pa.C.S. § 2703(a)). Kevin M. Kallenbach, Esquire, was Petitioner's court-appointed counsel.

On October 25, 2005, the court sentenced Petitioner to a term of imprisonment of 3-7 years on the Aggravated Assault count. The other counts merged for sentencing purposes.

---

[1] Respondents have submitted the Common Pleas Court's file and relevant transcripts. The documents in the Common Pleas Court's file are indexed and numbered 1 through 37. They shall be cited to as "CP Dkt. No. __ ."

Petitioner, through Attorney Kallenbach, filed an appeal with the Superior Court of Pennsylvania. He raised two claims. First, he contended that there was insufficient evidence to support the jury's verdict on the Aggravated Assault count since it had acquitted him of the offense of Assault By a Prisoner. Second, he contended that his sentence was excessive in light of his mental limitations. (CP Dkt. No. 18).

On April 3, 2006, the trial court issued its Rule 1925(b) Opinion, in which it advised that Petitioner's convictions and sentence should be affirmed. (CP Dkt. No. 19, Commonwealth v. Iacovetti, No. 732 of 2005, slip op. (CP Erie, Apr. 3, 2006)). The Superior Court agreed and on October 12, 2006, it issued a Memorandum Opinion in which it denied Petitioner's claims and affirmed his judgment of sentence. Commonwealth v. Iacovetti, No. 2152 WDA 2005, slip op. (Pa.Super. Oct. 12, 2006). Petitioner did not file a petition for allowance of appeal ("PAA") with the Pennsylvania Supreme Court. Accordingly, his judgment of sentence became final on or around November 11, 2006, thirty days after the Superior Court's decision was issued and the time for filing a PAA expired. Gonzalez v. Thaler, — U.S. — , 132 S.Ct. 641, 653-56 (2012); Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

More than one year later, on January 2, 2008, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. (CP Dkt. No. 23). The court appointed William J. Hathaway, Esquire, to represent him. Hathaway subsequently filed a petition for leave to withdraw as counsel and an accompanying "no-merit" letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa. 1988). (CP Dkt. Nos. 26, 27). Hathaway explained that the PCRA motion was "patently untimely" under the applicable one-year statute of limitations (42 Pa.C.S. § 9545(b)). He also explained that Petitioner had not stated a cognizable claim for post-conviction relief.

2

On January 29, 2008, the PCRA Court issued an Order and Notice of Intent to Dismiss PCRA Without a Hearing Pursuant to Pa.R.Crim.P. 907(1). (CP Dkt. No. 27). On or around April 29, 2008, the court issued an Order in which it denied the PCRA motion and granted Hathaway's petition for leave to withdraw. It determined that the PCRA motion was untimely, and that Petitioner failed to state claim for relief. (CP Dkt. No. 30).

On May 28, 2008, Petitioner filed a *pro se* Notice of Appeal with the Superior Court. (CP Dkt. No. 32). The PCRA Court issued an order notifying him that he must comply with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure and file a Statement of Errors Complained of on Appeal on or before July 7, 2008. (CP Dkt. No. 33). Petitioner did not file the Rule 1925(b) Statement and, therefore, the PCRA Court issued an Order in which it advised that Petitioner had not preserved any issues for appellate review. (CP Dkt. No. 35).

On August 25, 2008, the Superior Court issued an Order in which it dismissed Petitioner's appeal for failure to comply with Rule 3517 of the Pennsylvania Rules of Appellate Procedure. (CP Dkt. No. 36). That Rule required Petitioner to complete and return a docketing statement on a form that had been provided to him by the Prothonotary. Pa.R.A.P. 3517. See also Darlington, McKeon, Schuckers, and Brown, *Pennsylvania Appellate Practice* (2010-11 ed.) § 3517:3. Petitioner did not file a PAA with the Pennsylvania Supreme Court. Accordingly, his PCRA proceeding concluded at the very latest on or around September 24, 2008, the date upon which the time to file a PAA expired.

On or around May 29, 2011, more than two years and eight months after his PCRA proceeding concluded, Petitioner filed his petition for a writ of habeas corpus with this Court. He raises the following five claims for relief:

    Claim 1:    His sentence "was illegal, unreasonable, and manifestly excessive in light of [his] extraordinary mental limitations."

3

Claim 2: The Commonwealth presented insufficient evidence to support his Aggravated Assault conviction, as demonstrated by the jury's verdict of acquittal on the charge of Assault By a Prisoner.

Claim 3: Attorney Kallenbach was ineffective for failing to secure exculpatory evidence (a surveillance video).

Claim 4: Attorney Kallenbach was ineffective for failing "to investigate, secure and introduce" Petitioner's mental health issues "to mitigate any guilty verdict and sentence."

Claim 5: The prosecution committed misconduct by failing to disclose the videotape of the assault.

[ECF No. 20 at 5-14].

Respondents have filed an Answer [ECF No. 32], in which they contend that the petition should be denied because it is untimely. They also contend that Claims 3, 4, and 5 must be denied because they are procedurally defaulted, and that Claims 1 and 2 have no merit.

### B. Discussion[2]

#### (1) The Petition Should Be Dismissed Because It Is Untimely

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). AEDPA requires, with a few exceptions not applicable here, that habeas corpus petitions under 28 U.S.C. § 2254 be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A). As set forth above,

---

[2] On May 3, 2012, this Court issued an Order in which it denied Petitioner's motion for a temporary restraining order. [ECF No. 39]. Petitioner appealed that decision to the U.S. Court of Appeals for the Third Circuit, and that appeal is still pending. [ECF No. 43]. Although the filing of a notice of appeal ordinarily divests a district court of jurisdiction, the filing of an interlocutory appeal from an order denying an injunction does not prevent a district court from proceeding to determine the action on the merits. United States v. Price, 688 F.2d 204, 215 (3d Cir.1982); see also Wright, Miller & Cooper, 16 Federal Practice & Procedure Juris. § 3921.2 (2d ed.). This Court, therefore, retains jurisdiction to rule on the merits of the habeas petition.

Petitioner's judgment of sentence became final on or around November 11, 2006. Thus, he had one year from that date, or until on or around November 11, 2007, to file a timely federal habeas petition with this Court. His federal habeas petition, which he filed on or around *May 29, 2011*, is clearly time-barred.[3]

The U.S. Supreme Court has held that AEDPA's statute-of-limitation period "is subject to equitable tolling in appropriate cases." Holland v. Florida, — U.S. — , 130 S.Ct. 2549, 2560 (2010). Petitioner would be entitled to equitable tolling only if he shows both that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Id. at 2562 (emphasis added). See also Munchinski v. Wilson, 694 F.3d 308, 329 (3d Cir. 2012). "This conjunctive standard requires showing *both* elements before we will permit tolling." Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis in original). "Mere excusable neglect is not sufficient." Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 619 (3d Cir. 1998). The Third Circuit Court of Appeals has explained:

> "There are no bright lines in determining whether equitable tolling is warranted in a given case." Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011). Nevertheless, "courts must be sparing in their use of equitable tolling," Seitzinger v. Reading Hosp. & Medical Ctr., 165 F.3d 236, 239 (3d Cir. 1999), and should do so "only when the principles of equity would make the right application of a limitation period unfair." Miller, 145 F.3d at 618.

Sistrunk, 674 F.3d at 190.

Petitioner contends that his mental impairments and low I.Q. constitute extraordinary circumstances that invoke the equitable tolling doctrine. See Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001) (mental incompetence is not a *per se* cause for equitable tolling, but it could be a basis provided it

---

[3] There is no basis to statutorily toll the limitations period pursuant to 28 U.S.C. § 2244(d)(2). Petitioner did not file his PCRA motion until on or around January 2, 2008, which was after AEDPA's limitations period had expired. Moreover, because his PCRA motion was untimely, it does not qualify as a "properly filed application for State post-conviction or other collateral review" under the terms of § 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (a state postconviction petition that is "rejected ... as untimely ... was not 'properly filed' ... and ... [does] not entitle[] [a federal habeas corpus petitioner] to statutory tolling under § 2244(d)(2).").

5

somehow affected the petitioner's ability to timely file a habeas corpus petition). He has failed, however, to demonstrate that he could show that he was diligent in filing his petition, which is untimely by more than three years and six months. For that reason, Petitioner has not shown that equitable tolling should be applied to this case.

Based upon all of the foregoing, the petition should be denied because it is untimely.

### (2) Claim 1 Is Not Cognizable In Federal Habeas

Under 28 U.S.C. § 2254, habeas relief is only available on the grounds that Petitioner's judgment of sentence is violative of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

Petitioner claims that he is entitled to habeas relief because his sentence "was illegal, unreasonable, and manifestly excessive in light of [his] extraordinary mental limitations." [ECF No. 20 at 5]. Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review. See, e.g., Chapman v. United States, 500 U.S. 453, 465 (1991); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984). Thus, unless an issue of constitutional dimension is implicated in a sentencing argument, see, e.g., 3 Charles A. Wright, *et al.*, Federal Practice and Procedure: Crim. § 550, Constitutional Limits on the Sentencing Decision (4th ed.), this Court is without power to grant habeas relief.

Since the allegations that Petitioner makes in Claim 1 raise only issues of state law, it is not cognizable in federal habeas. Therefore, in additional to being untimely, Claim 1 also should be denied for that reason as well.

6

### (3) Claim 2 Has No Merit

#### (a) Standard of Review

Petitioner contends that the Commonwealth introduced insufficient evidence to support the jury's verdict of guilt on the offense of Aggravated Assault. He argues that because it found him not guilty of Assault By a Prisoner, 18 Pa.C.S. § 2703, it was "illogical" for it to find him guilty of Aggravated Assault, 18 Pa.C.S. § 2702(a)(3). He raised this same claim on direct appeal and the Superior Court denied it on the merits. Because it did, this Court's analysis of Claim 2 is governed by AEDPA's standard of review, which is codified at 28 U.S.C. § 2254(d). It provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–
>
> (1) resulted in a decision that was *contrary to,*[4] *or involved an unreasonable application of,*[5] *clearly established Federal law, as determined by the Supreme Court of the United States*; or
>
> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.

(Emphasis added).

The Supreme Court has stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

---

[4] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

[5] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 407).

7

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010). See also Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings…. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.").

### (b) Was the State Court's Decision "Contrary To or An Unreasonable Application Of Clearly Established Federal Law"?

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze Claim 2 is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the offense. Id. at 309. Under Jackson, evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial,

8

requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" Coleman v. Johnson, — U.S. — , 132 S.Ct. 2060, 2064 (2012) (*per curiam*) (quoting Jackson, 443 U.S. at 319).

In rejecting this claim in its 1925(b) Opinion, the trial court, whose adjudication was adopted in full by the Superior Court, applied the Pennsylvania equivalent of the Jackson standard. (CP Dkt. No. 19, Iacovetti, No. 732 of 2005, slip op. at 3). See also Iacovetti, No. 2152 WDA 2005, slip op. at 5-6; Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). Because the state court applied the correct legal standard when it evaluated this claim, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). See, e.g., Williams, 529 U.S. at 406. Therefore, the only remaining question for this Court to decide is whether its decision was an "unreasonable application of" Jackson. 28 U.S.C. § 2254(d). The Supreme Court has recently stressed to federal habeas courts conducting this analysis that:

> [w]e have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. Cavazos v. Smith, 565 U.S. 1, __ (2011) (*per curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U.S. __, __ (2010) (slip op., at 5)).
> - - -
> [T]he only question [for the state court] under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

Coleman, 132 S.Ct. at 2062, 2065.

9

In its analysis of this claim, the trial court first explained that the offense of Aggravated Assault at issue here is defined as: "A person is guilty of aggravated assault if he: … attempts to cause or intentionally or knowingly causes *bodily injury* to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]" 18 Pa.C.S. § 2702(a)(3) (emphasis added).[6] "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." Id. § 2301. In contrast, the trial court noted, the offense of Assault By a Prisoner provides in relevant part: "A person who is confined in or committed to any … county detention facility … located in this Commonwealth is guilty of a felony of the second degree if he, while so confined … intentionally or knowingly, commits an assault upon another … by any means or force likely to produce *serious bodily injury*." Id. § 2703. "Serious bodily injury" is defined as: "Bodily injury, which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. § 2301.

The trial court then summarized the following evidence, which it found to be sufficient to satisfy the elements of the offense of Aggravated Assault:

> Based on the testimony and evidence presented at trial there was sufficient evidence for the jury to establish all the elements of the charged offense of aggravated assault. The Commonwealth and the defendant both presented testimony regarding an incident that occurred on May 26, 2004, during the distribution of medication in the restrictive housing unit (RHO) at the State Correctional Institute Albion, involving the defendant and Correctional Officer Howard Sisem. According to testimony, on that day Nurse Donald Klos was being escorted by [the] Officer while he distributed medication around the RHU in which the defendant's cell was located. (T.T., Day 2, 9/16/05, pp. 7, 16, 41). When Officer Sisem and Nurse Klos came to the defendant's cell they passed him by; because of the defendant's security status their interactions with him were required to be videotaped. (T.T., Day 2, 9/16/05, pp. 17-18). As the officer and nurse passed by the defendant, the defendant requested his medications at which time he was informed that they would return with the camera. (T.T., Day 2, 9/16/05, pp. 19, 42, 67). Officer Sisem, Nurse Klos, and the defendant testified that the defendant became

---
[6] Subsection (c)(9) of 18 Pa.C.S. § 2702 provides, in relevant part, that the officers, agents, employees and other persons referred to in subsection (a) shall be an "officer or employee of a correction institution, county jail or prison[.]"

10

aggravated and irritated by this. (T.T., Day 2, 9/16/05, pp. 20, 42, 72, 78). A few minutes later the defendant's cell door malfunctioned[6] and opened, allowing the defendant to voluntarily exit his cell (T.T., Day 2, 9/16/05, pp. 6, 73). The testimony presented to the jury revealed that the defendant knew he was not to leave his cell, and that he was aware that the door was not working properly because it had opened two previous times that day, however he nonetheless chose to exit his cell. (T.T., Day 2, 9/16/05, pp. 73, 85).

> [6] According to the officer who was in the control center, a work order had been submitted on the panel which controlled the defendant's door a week prior to the incident.

According to Nurse Klos, at the time the defendant exited his cell, he and the medicine cart were positioned approximately 7-10 feet away from Officer Sisem. (T.T., Day 2, 9/16/05, p. 44). The Commonwealth witnesses, Officer Shane Endres, Officer Sisem and Nurse Klos, all testified that the defendant, as he exited his cell, approached Officer Sisem in an aggressive manner. (T.T., Day 2, 9/16/05, pp. 7, 21, 43-44). They further stated that Officer Sisem initially had his back turned towards the defendant, and upon reaching Officer Sisem the defendant assaulted him by punching him in the head. (T.T., Day 2, 9/16/05, pp. 7, 21, 43-44). Officer Sisem described his own actions when he saw the defendant approaching him:

> I then moved towards the inmate to secure the inmate and as I moved towards him, he picked up the razor and when he got to me, he took a swing with his right hand with a closed fist and struck me in the side right above the right side of my ear.

(T.T., Day 2, 9/16/05, p. 21). The defendant also stated that he left his cell at a fast pace and that the officer's back was turned to him. (T.T., Day 2, 9/16/05, p.75). However, the defendant claimed he was going towards the medical cart not Officer Sisem and that he was the one assaulted by Officer Sisem (T.T., Day 2, 9/16/05, pp. 75-76).

When Officer Sisem tried to restrain him the defendant grabbed his shirt and started to pull both of them to the ground. (T.T., Day 2, 9/16/05, p. 22). The testimony went on to explain that a fight between Officer Sisem and the defendant ensued. Officer Endres at that time called for assistance. (T.T., Day 2, 9/16/05, p.8). Officer Sisem stated that during the fight, while he was attempting to restrain the defendant, the defendant revealed a razor and was attempting to cut him with it. (T.T., Day 2, 9/16/05, p. 22). Officer Sisem described what happened when the defendant struck him and then was pulling them both to the ground:

> A: I then struck Mr. Iacovetti and it turned him, and he grabbed a hold of my shirt and ripped the button off my shirt, started to pull us to the ground. I then pushed him back off of me, which he lost balance and there

11

> is a windowsill that's probably a couple feet away from where he falls
> back, and strikes his head on the windowsill.
>
> Q.   Okay.  Go ahead.
>
> A.   I then proceed over to the inmate and attempted to restrain him
> with handcuffs.  He kept fighting throwing punches, kicks, the whole time
> giving him orders to stop resisting, he needed to be handcuffed.  I got a
> hold of his arm, and placed him in an arm bar and attempted to take him
> down to the ground.  The whole time he struggled to get up off the ground
> from where he was.  And … as I got him in the arm bar, and I had a hold
> of his wrist and further up on his arm, I noticed that he had a razor in his
> hand, and at this time, he's taking the razor and trying to cut me, actually
> cut me with the razor.  I pinned his arm to the ground.  I kicked free with
> my right boot, kicked free the razor from his hand and the whole time he's
> still trying to – swinging and kicking.  A radio call was made for
> assistance, and other officers arrived to help restrain the inmate.

<u>Id.</u>  Nurse Klos testified he witnessed Officer Sisem attempting to get an object out of the defendant's hand.  (T.T., Day 2, 9/16/05, p. 45).  Officer Sisem testified that after the incident he informed the officers who responded to the call for assistance, that he had kicked a razor out of the defendant's hand during the assault and was somewhere in the RHU.  (T.T., Day 2, 9/16/05, p. 26).  Nurse Klos later went on to testify, that after the incident he returned to his cart and found a razor on the floor that had not been there prior to the fight.  (T.T., Day 2, 9/16/05, p. 47).

The testimony further revealed that while Officer Sisem was trying to restrain the defendant … Nurse Klos attempted to assist him in keeping the defendant down because the defendant would not stop trying to get out of Officer Sisem's hold.  (T.T. Day 2, 9/16/05, pp. 7, 21, 43-44).  The defendant himself testified that he continued to try to get up once down.  (T.T., Day 2, 9/16/05, p. 81).  After Officer Travis Irwin and other offices appeared to assist Officer Sisem, both the defendant and Officer Sisem were examined for injuries.  (T.T., Day 2, 9/16/05, p. 60-61).  A camera was secured and Officer Irwin escorted the defendant to the triage room to be examined.  Officer Irwin testified that for approximately forty-five minutes the defendant continued to make verbal threats regarding Officer Sisem.  (T.T., Day 2, 9/16/05, pp. 60-61).  The defendant admitted that throughout this whole incident he was upset, angry, and irritated with Officer Sisem.  (T.T., Day 2, 9/16/05, pp. 60-94).

The jury can choose to believe or disbelieve any or all of the evidence presented at trial.  Here, the jury found the Commonwealth's version to be more credible than the defendant's.  The jury's conclusion that the Commonwealth proved that the defendant was guilty of aggravated assault beyond a reasonable doubt is supported by the evidence.  The crimes in question are two distinct offenses requiring the Commonwealth to prove different elements.  The jury did not have to render the same verdict as to each offense.

> If believed by the jury, the Commonwealth's evidence was sufficient to prove that the defendant attempted to cause, or did in fact intentionally or knowingly cause, bodily injury to a correctional officer.

(CP Dkt. No. 19, Iacovetti, No. 732 of 2005, slip op. at 4-7).

The trial court's thorough decision that the jury's verdict was supported by the constitutional minimum of evidence necessary clearly was a reasonable application of Jackson. Petitioner contends that if, as the jury concluded, the evidence was insufficient to convict him of the offense of Assault By a Prisoner, then the evidence had to have been insufficient to sustain its finding that he committed Aggravated Assault. However, as the trial court explained, the two offenses vary in the elements that need to be established by the Commonwealth beyond a reasonable doubt to make a finding of guilty. Whereas Assault By a Prisoner requires proof of "serious bodily injury," the offense for which Petitioner was convicted only requires proof of "bodily injury." Thus, the crimes in question are two distinct offenses that required the Commonwealth to prove different elements

Based upon all of the foregoing, in addition to being untimely, Claim 2 should be denied on the merits.

### (4) Claims 3, 4 and 5 Are Procedurally Defaulted

Claims 3, 4 and 5 must be denied because Petitioner did not exhaust them in the state court, and, therefore, he has procedurally defaulted them. The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). See also O'Sullivan v. Boerckel, 526 U.S. 838, 842-49 (1999). The requirement is:

> principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and

13

> protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted).

Importantly, in order to exhaust a claim, a petitioner must "fairly present" it to each level of the state courts. See, e.g., Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b)); O'Sullivan, 526 U.S. at 848. In Pennsylvania, this requirement generally means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then to the Superior Court either on direct or PCRA appeal. See, e.g., Lambert, 387 F.3d at 233-34.

Here, the only claims that Petitioner properly raised to the Superior Court are identified herein as Claims 1 and 2. He did not exhaust Claims 3, 4 and 5. Because he did not, those claims are procedurally defaulted. See, e.g., Lines, 208 F.3d at 160; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner failed to raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.

A petitioner whose habeas claim is procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice."[7] See, e.g., Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986).

Petitioner blames the "ineffective assistance" of his PCRA counsel, Attorney Hathaway, for the default of Claims 3, 4 and 5. In Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012), the Supreme Court established a "limited qualification" to its holding in Coleman that an attorney's error in a post-conviction proceeding does not establish cause to excuse a procedural default. It held for the first time that in states like Pennsylvania, where state law requires that claims of ineffective assistance of trial counsel be raised in an initial-review collateral proceeding, a petitioner may establish "cause" sufficient to overcome the default of a claim if "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984)." Martinez, 132 S.Ct. at 1318.

The holding in Martinez does not assist Petitioner for three reasons. First, Petitioner was proceeding *pro se* before the Superior Court in his PCRA appeal. Therefore, the failure to raise Claims 3, 4 and 5, must be attributed solely to him. He abandoned his appeal and it was dismissed because he failed to file the proper paperwork. Petitioner cannot blame Attorney Hathaway for what occurred in his

---

[7] A petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This exception provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). See also House v. Bell, 547 U.S. 518 (2006); Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. It is not applicable to Petitioner's case.

15

appeal because Hathaway had been permitted to withdraw as counsel after he filed the required Finley/Turner letter.

Second, Martinez applies only to ineffective-assistance-of-trial-counsel claims. 132 S.Ct. at 1315-18, 1319 ("Coleman held that an attorney's negligence in a postconviction proceeding does not establish cause, *and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial*.") (emphasis added). Therefore, Petitioner cannot rely on that decision to overcome the default of his prosecutorial misconduct claim set forth in Claim 5.

Third, Petitioner cannot rely on any alleged ineffectiveness on Hathaway's part to overcome the default of any of his claims because he failed to raise the allegation that Hathaway was ineffective to the Superior Court when he had the opportunity to do so in a PCRA appeal.[8] See, e.g., Edwards v. Carpenter, 529 U.S. 446 (2000) (a petitioner can procedurally default the claim of ineffectiveness that he is relying upon to establish cause for the default of another claim). As the Supreme Court has explained:

> [W]e think that the exhaustion doctrine, which is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," Rose v. Lundy, 455 U.S. 509, 518 (1982), *generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default….* [I]f a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available. The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court "to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," Darr v. Burford, 339 U.S. 200, 204 (1950), and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

Carrier, 477 U.S. at 488-89 (emphasis added, parallel citations omitted).

---

[8] At the time at issue here, the Superior Court considered claims of PCRA counsel's ineffectiveness on appeal. See, e.g., Commonwealth v. Lauro, 819 A.2d 100, 108 (Pa. Super. 2003). It has recently changed that policy after concluding that "a majority of the Supreme Court [of Pennsylvania] agrees that issues of PCRA counsel effectiveness must be raised in a serial PCRA petition or in a response to a notice of dismissal before the PCRA court." Commonwealth v. Ford, 44 A.3d 1190, 1200 (Pa.Super. 2012).

16

Based upon all of the foregoing, in addition to being untimely, Claims 3, 4 and 5 must be denied because they are procedurally defaulted.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance

with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 13, 2012

cc: The Honorable Sean J. McLaughlin
     United States District Judge